UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE:<br><br>JOHN FELIX CASTLEMAN, SR., and KIMBERLY KAY CASTLEMAN,<br>    *Debtors*. | CASE NO. 2:21-cv-00829-JHC<br><br>ORDER AFFIRMING THE BANKRUPTCY COURT'S MEMORANDUM DECISION |

# I.

## INTRODUCTION

This appeal arises from the bankruptcy court's June 4, 2021 memorandum decision and order that, upon conversion from Chapter 13 to Chapter 7, the Chapter 7 estate includes the post-petition, pre-conversion increase in equity in the Debtors' house. Dkt. #1 at 14. Having considered the briefs of the Debtors and the Trustee, the applicable law, and the file herein, the Court affirms the bankruptcy court's decision.

# II.

## BACKGROUND

The parties do not dispute these facts:

ORDER AFFIRMING THE BANKRUPTCY
COURT'S MEMORANDUM DECISION - 1

On June 13, 2019, John Felix Castleman, Sr. and Kimberly Kay Castleman ("Debtors") filed for bankruptcy under Chapter 13. Dkt. # 6–1 at 2. On September 25, 2019, the bankruptcy court confirmed their Chapter 13 plan. *Id.* at 5–6. At the time of filing, the Debtors listed their house in their original schedules with a value of $500,000.00. Dkt. # 9 at 17. They claimed a homestead exemption of $124,923.00 and listed a mortgage of $375,077.00. *Id.* at 24, 28. Later, their circumstances changed such that they could no longer adhere to their Chapter 13 plan and, on February 5, 2021, they exercised their right to convert their case to Chapter 7. Dkt. # 9 at 107, 124; Dkt. # 6–1 at 9. Between the time of filing and conversion, their house appreciated about $200,000.00, and the Trustee claims that it is currently worth at least $700,000.00. Dkt. # 9 at 119. This action arose out of the Trustee's motion to sell the house (Dkt. # 9 at 117), and the Debtors' objection to the motion (*Id.* at 123).

The Debtors claim that they are entitled to the homestead exemption as well as the increase in equity over the Chapter 13 period, including equity derived from mortgage payments and appreciation. Dkt. # 8. The Trustee claims that the Debtors are entitled to only the homestead exemption, and that the Trustee may sell the residence for its present market value and use any nonexempt equity to pay creditors. Dkt. # 11.

The bankruptcy court concluded that the post-petition, pre-conversion equity in the Debtors' house belongs to the bankruptcy estate. Dkt. # 1 at 14. The Debtors appeal.

### III.

#### STANDARD OF REVIEW

This Court reviews a bankruptcy court's interpretation of the Bankruptcy Code de novo. *See Einstein/Noah Bagel Corp. v. Smith (In re BCE W., L.P.)*, 319 F.3d 1166, 1170 (9th Cir. 2003).

ORDER AFFIRMING THE BANKRUPTCY
COURT'S MEMORANDUM DECISION - 2

## IV.

## ANALYSIS

A. Interpretation of 11 U.S.C. § 348(f)(1)(A)

Because this case involves a conversion from Chapter 13 to Chapter 7, the Court first looks to 11 U.S.C. § 348(f)(1)(A), which states:

> (1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—
>
> > (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;[1]

The statute unambiguously provides that property acquired after the initial Chapter 13 petition but before the conversion to Chapter 7 inures to the debtor. *See, e.g.*, *Harris v. Viegelahn*, 575 U.S. 510, 514 (2015) (holding that post-petition, pre-conversion wages earned by the debtor are excluded from the estate). But its plain language does not address whether the increase in equity of a pre-petition asset qualifies as a separate, after-acquired property interest— as with after-acquired wages—or whether it is inseparable from the asset itself. Put another way, § 348(f)(1)(A) does not indicate whether "property of the estate, as of the date of filing of the petition" refers to property as it existed at the time of filing, with all its attributes, including equity interests.

---

[1] The briefing in this case—and particularly Trustee's brief—references 11 U.S.C. § 348(f)(1)(B), which concerns valuations of property and of allowed secured claims in conversion cases. But this provision does not apply because a valuation is not needed to determine whether the post-petition, pre-conversion equity in the house inures to the Debtors or to the estate. None of the cases cited by the parties rely on section 348(f)(1)(B) in addressing this issue. The provision is more appropriately applied in cases involving redemption, *see, e.g.*, *In re Airhart,* 473 B.R. 178 (Bankr. S.D. Tex. 2012), and lien avoidance/bifurcation, *see, e.g.*, *In re Martinez,* No. 7-10-11101 JA, 2015 WL 3814935, at *1 (Bankr. D.N.M. June 18, 2015). The briefing also references 11 U.S.C. § 348(f)(2), which concerns the contents of the estate when a debtor converts to Chapter 7 in bad faith. Neither party alleges, nor is there any evidence in the record to suggest, that the Debtors converted in bad faith.

ORDER AFFIRMING THE BANKRUPTCY
COURT'S MEMORANDUM DECISION - 3

Based on the subsection's silence on this issue, the Debtors assert that the statute is ambiguous.[2] They urge the Court to look to alternate sources of authority such as the legislative history, which they argue shows Congress's intent to classify increased equity in a pre-petition asset as a separate and after-acquired property interest. Dkt. # 8 at 12–13. But before looking beyond the plain language of the provision, the Court must first seek to interpret section 348(f)(1)(A) based on the full statutory context of the Bankruptcy Code. *See, e.g.*, *Food Mktg. Inst. v. Argus Leader Media,* 139 S. Ct. 2356, 2364 (2019) ("In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself . . . Where . . . that examination yields a clear answer, judges must stop." (internal citations omitted)); *see also Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").

To gather evidence of statutory meaning, a Court may turn to the rest of the provision, *see, e.g.*, *NLRB v. SW Gen., Inc.,* 137 S. Ct. 929, 938–39 (2017) (considering disputed terms from statutory subsection individually and then considering them as a whole); the act as a whole, *see, e.g.*, *FCC v. AT&T Inc.,* 562 U.S. 397, 407–08 (2011) (considering meaning of "personal privacy" given its use in a distinct but similar exemption within the same statute); or similar provisions elsewhere in the law, *see, e.g.*, *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.,* 142

---

[2] The Debtors also point to the varying ways courts have interpreted the provision in the context of post-petition, pre-conversion equity as reflective of ambiguity. *Compare In re Barrera,* 620 B.R. 645 (Bankr. D. Colo. 2020), aff'd, No. BAP CO-20-003, 2020 WL 5869458 (10th Cir. BAP Oct. 2, 2020) (holding that post-petition, pre-conversion equity gain inures to the debtor) *and In re Cofer*, 625 B.R. 194, 202 (Bankr. D. Idaho 2021) (same) *with In re Goins*, 539 B.R. 510, 516 (Bankr. E.D. Va. 2015) (holding that post-petition, pre-conversion equity gain inures to the estate) *and In re Peter*, 309 B.R. 792, 795 (Bankr. D. Or. 2004) (same).

ORDER AFFIRMING THE BANKRUPTCY
COURT'S MEMORANDUM DECISION - 4

S. Ct. 941, 947 (2022) (looking to how "nearby statutory provisions" use a specific word). As the Supreme Court stated in *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371 (1988), "Statutory construction . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme. . ."

### B.  11 U.S.C. § 541(a)

Section 541(a) broadly defines the contents of the bankruptcy estate. It provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held." 11 U.S.C. § 541(a)(1). Property of the estate also includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).

In *Wilson v. Rigby,* 909 F.3d 306, 309 (9th Cir. 2018), the Ninth Circuit interpreted these provisions together, in the Chapter 7 context, to mean that post-petition appreciation in a debtor's home inures to the estate. It found that the debtor's residence transferred to the estate upon filing of the petition under section 541(a)(1), and that any post-petition appreciation was encompassed in section 541(a)(6)'s definition of "[p]roceeds, product, offspring, rents, or profits" of the property. *Id.*[3] Although the Debtors emphasize that *Wilson* is not a conversion case, they do not argue that the terms, "proceeds," "product," "offspring," "rents," or "profits" should carry different meanings in the conversion context; nor does the Court see why they should.

The Ninth Circuit's interpretation of section 541(a) illuminates the meaning of section 348(f)(1). It is well settled that in a Chapter 7 case, all property that the debtor acquires post-

---

[3] The Court notes that *Wilson* interprets the plain meaning of the terms, "proceeds, product, offspring, rents, or profits" to include appreciation *even if* a sale has not yet occurred. But the Court recognizes that it is bound by the Ninth Circuit's decision.

ORDER AFFIRMING THE BANKRUPTCY
COURT'S MEMORANDUM DECISION - 5

petition is excluded from the estate. *See, e.g.*, *Harris,* 575 U.S. at 514 (citing § 541(a)(1)). Therefore, if appreciation were a separate, after-acquired property interest, it would have to inure to the debtor. The Ninth Circuit, in finding that appreciation inures to the estate under 541(a)(6), has necessarily found that increased equity in a pre-petition asset cannot be a separate, after-acquired property interest. This logic applies with equal force in a conversion case. Thus, although section 348(f)(1)(A) may appear ambiguous at first blush, the Court concludes that it is unambiguous when considered in the context of the Code as a whole and under the Ninth Circuit's holding in *Wilson*.

Here, as in *Wilson,* it is undisputed that the Debtors' residence was property of the bankruptcy estate at the petition date, and that the Debtors remained in possession of the residence at the date of conversion. Further, under *Wilson*, any changes in value are classified as "[p]roceeds, product, offspring, rents, or profits" under section 541(a)(6). Therefore, the increased equity is property of the bankruptcy estate, and the trustee may sell the residence including the appreciation to pay creditors. To the extent that the Debtors have made any mortgage payments on the property, they may file a motion for payment of administrative expenses under 11 U.S.C. § 503(b).[4]

---

[4] The Court notes that, in jurisdictions not bound by the Ninth Circuit's decision in *Wilson*, section 348(f)(1)(A) is amenable to a different interpretation. In particular, the legislative history of that provision suggests that Congress did, in fact, intend for post-petition equity in a pre-petition asset to be excluded from the bankruptcy estate. *See* H.R.Rep. No. 103-835 at 57 (1994), as reprinted in 1994 U.S.C.C.A.N. 3340, 3366. But the Court does not reach the legislative history because the Ninth Circuit's interpretation of the Bankruptcy Code as a whole clarifies the meaning of section 348(f)(1)(A).

## V.

## CONCLUSION

Given the above, the Court affirms the decision of the bankruptcy court.

Dated this 1st day of July, 2022.

*John H. Chun*
John H. Chun
United States District Judge